THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DONALD KLINE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-08-990 |
| THE HOME DEPOT INC., | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Donald Kline ("Kline") has filed the present action against his former employer, Defendant Home Depot U.S.A., Inc. ("Home Depot"), which asserts a claim of disability discrimination under the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12101 *et seq.*, and state law claims of fraudulent misrepresentation and promissory estoppel. Pending before this Court is Defendant's Motion for Summary Judgment (Paper No. 16). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, Defendant's motion is GRANTED.

## BACKGROUND

"When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion." *CapitalSource Fin., LLC v. Delco Oil, Inc.*, 608 F. Supp. 2d 655, 660 (D. Md. 2009) (citing *United States v. Diebold*, 369 U.S. 654, 655 (1962)). Plaintiff Donald Kline suffers from Type II diabetes, a medical condition that was diagnosed approximately 30 years ago. (Pl.'s Ex. A ¶1.) To treat his illness, Kline monitors his blood-sugar levels about four times a day and he routinely administers two forms of

prescription insulin.  (*Id.*)  In addition, he manages his diabetes by watching what he eats and by avoiding foods that readily turn to sugar.  (Kline Dep. 128-29.)

Kline has supported himself financially by working several different jobs.  Since 1993 he has owned and operated a landscaping business, and he works 20 to 25 hours per week mowing lawns during the warmer months of the year, and in the winter he sells Christmas trees.  (*Id.* at 12, 19, 30, 35-36.)  In 2007 and 2008, he worked 20 to 25 hours per week as a security guard at a nearby restaurant.  (Kline Dep. 9-10.).  (*Id.* at 9-10.)  Despite his heavy workload, Kline normally takes off from work on Saturdays to ride his motorcycle.  (*Id.* at 18.)

In March of 2003, Kline began working as a Sales Associate in the Garden Department at the Home Depot store in Frederick, Maryland.  (Kline Dep. 29-30.)  He was employed on an "at-will" basis, and Home Depot had the right to terminate his job at any time, "without cause or reason."  (Def.'s Ex. 2.)  From March 2003 through April 2006, Kline worked on a full-time basis for Home Depot, clocking eight hours per day.  Because he continued to operate his landscaping business in the evenings, Kline was working approximately 65 hours a week during this period.  (Kline Dep. 30-31.)  In April of 2006, Kline changed his work schedule, and he began working on a part-time basis at Home Depot on Sundays and Mondays.  (*Id.* 38-39, 78-79.)  During this period he continued to conduct his lawn business.  (*Id.* at 78.)

Kline claims that he transitioned to part-time status because Home Depot kept changing his weekly hours.  (Pl.'s Ex. A ¶ 4.)  Kline states that due to his diabetic condition he needed to work a more consistent work schedule.  (*Id.*)  In addition, he claims that he had informed his supervisors, Robin Tigner, Cindy Baumgardner (Operations Manager), and Noreen McCurdy (Human Resources Manager), of his need for consistent hours.  (*Id.* at ¶ 5.)  He alleges that because Home Depot refused to provide him with consistent hours, he lost consciousness at least

three times during his employment.  (*Id.* at ¶ 6.)  One time after he passed out an ambulance had to be called to transport him to the hospital and on another occasion he was involved in a car accident.  (*Id.*)

From June 2006 until April 2008, Leoncio "Talby" Afable served as the Store Human Resources Manager at the Home Depot store in Frederick, Maryland.  (Afable Dep. 5-6.)  In this position, Afable was responsible for, among other things, hiring new employees.  (*Id.* at 6-7.)  At the start of the winter season in 2006, employees in the Garden Department, including Kline, began to have their hours reduced as business slowed.  (Kline Dep. 33-34, 139.)  Kline acknowledged that his hours had been cut during this period because of the reduction in business, and not because of his diabetes.  (*Id.* at 139.)  At this time, Kline asked Afable if he could take a month of leave so that he could do other work.  (*Id.* at 34-35.)  After conferring with the District Manager, Afable informed Kline that he could only take a leave of absence if he had a medical reason.  (*Id.* at 142-44.)  Afable also explained that Kline's practice of selling Christmas trees created a potential conflict of interest due to the fact that Home Depot also sold Christmas trees during the holiday season.  (Kline Dep. 35, 152-53; Afable Dep. 20-22.)  According to Kline, Afable advised him to resign and represented that "[Home Depot] can hire you back after the first of the year."  (*Id.* at 145.)  Soon thereafter, Kline voluntarily resigned from his position at Home Depot.  Afable stated that he informed Kline prior to his resignation that his eligibility for re-hire would depend upon his availability.  (Afable Dep. 44.)

In January of 2007, Kline sought to be rehired by Home Depot and submitted an updated employment application.  (Kline Dep. 135.)  In his updated application, Kline applied solely for a position in the Garden Department and indicated that he was only available on Sunday mornings and Monday evenings.  (Kline Dep. 148-49; Def's Ex. 2.)

After reviewing Kline's application, Afable decided not to rehire Kline due to his limited availability.  (Afable Dep. 43-44.)  Spring is the busiest season in the Garden Department, and Afable was seeking applicants who indicated a willingness to work more shifts.  (Afable Dep. 14-15, 23; Kline Dep. 143.)  Afable claimed that he was not aware of Kline's diabetes at the time of his resignation and reapplication, and that he did not learn about Kline's diabetes until he received the notice of his discrimination claim.  (Afable Dep. 25-26.)  In addition, he stated that Kline never informed him of any need to maintain a consistent work schedule.  (Afable Dep. 25.)  Kline acknowledged that he did not inform Afable about his diabetes and he was not sure whether anybody else had informed Afable.  (Kline Dep. 92.)

On July 24, 2007, Kline filed his charge of disability-related employment discrimination with the EEOC, alleging that Home Depot failed to rehire him and provide reasonable accommodations.  (Def.'s Ex. 5.)  On April 18, 2008, Kline filed a Complaint in this Court.  In Count I, he claims that Home Depot violated the Americans with Disabilities Act ("ADA").  In the remaining Counts, he asserts state law causes of action for fraudulent misrepresentation and promissory estoppel.  Defendant Home Depot filed the pending Motion for Summary Judgment on December 12, 2008 (Paper No. 16).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, a court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). After the moving party has established the absence of a genuine issue of material fact, the nonmoving party must present evidence in the record demonstrating an issue of fact to be resolved at trial. *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)). Summary judgment will be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## DISCUSSION

**I. Disability-Related Employment Discrimination**

Kline asserts three theories in support of his cause of action under the ADA.  He alleges that Home Depot engaged in disability-related discrimination by (1) failing to provide him with reasonable accommodations; (2) constructively discharging him; and (3) refusing to rehire him because of his diabetic condition.  (Compl. ¶¶ 11-19.)  Each of these claims is addressed in turn.

## A.  Reasonable Accommodations

Kline first attempts to establish his discrimination claim on the grounds that Home Depot failed to reasonably accommodate his disability by refusing to provide him with a non-fluctuating work schedule.  (Compl. ¶ 7, 13.)  However, this Court finds that Kline's allegations relating to this claim are time-barred and therefore cannot serve as an independent basis for liability under the ADA.

To be eligible to bring a claim under the ADA in federal court, a plaintiff must first exhaust his administrative remedies by filing a discrimination charge with the EEOC.  *See* 42 U.S.C. § 2000e-5(e)(1); *Walton v. Guidant Sales Corp.*, 417 F. Supp. 2d 719, 720-21 (D. Md. 2006).  The statute mandates that such a charge be filed within 180 days of the alleged discriminatory act, unless the state in which the alleged act occurred is a "deferral state," or a state with its "own law prohibiting discrimination and an agency enforcing the law."  *Nye v. Roberts*, 159 F. Supp. 2d 207, 210 (D. Md. 2001).  In a "deferral state" a plaintiff has 300 days from the alleged discriminatory act to file a claim with the EEOC.  *See* 42 U.S.C. § 2000e-5(e)(1).  Maryland is a deferral state[1].  *E.E.O.C. v. Hansa Products, Inc.*, 844 F.2d 191, 192 n.3 (4th Cir. 1988) (citing 29 C.F.R. § 1601.74 (1987)).  This 300-day deadline serves as a statute of limitations in regards to any subsequent judicial proceeding.  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1987).

---

[1] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof."  42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2).

Kline filed his charge of discrimination with the EEOC on July 24, 2007.  (Def.'s Ex. 5.)
Consequently, the 300-day filing period begins on September 27, 2006, and his ADA claim can
only be based on misconduct alleged to have occurred after this date.  Because Kline has not
alleged that he was denied any accommodation after September 27, 2006, his discrimination
charge cannot be based on this theory.[2]

## B.  Constructive Discharge

To succeed on a claim of constructive discharge, there must be a showing that an
"employer deliberately made an employee's working conditions intolerable and thereby forced
him to quit his job."  *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1350 (4th Cir. 1995)
(internal quotations and citation omitted).

Kline cannot sustain his theory of constructive discharge because he has failed to show
that he was subjected to intolerable working conditions, or that his employer acted with
deliberate intent.  To determine whether working conditions were intolerable, courts employ an
objective standard, analyzing "whether a reasonable person in the plaintiff's position would have
felt compelled to resign."  *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 237 (4th Cir. 1999).

As circumstantial evidence of intolerable working conditions, Kline notes that
supervisors Robin Tigner, Cindy Baumgardner, and Noreen McCurdy disregarded his request for
a consistent schedule due to his diabetes.  (Pl.'s Ex. A ¶¶ 4-6.)  Because of his fluctuating
schedule, he claims that he passed out at work on three different occasions.  (*Id.* at ¶ 6.)
However, Kline does not draw any nexus between these events and his ultimate resignation in
November of 2006.  Indeed the occasions when Kline passed out occurred prior to April of
2005—more than a year and a half before his resignation.  (Kline Dep. 58.)

---

[2] Plaintiff's counsel conceded, in an email to defense counsel, that any alleged discriminatory "acts more than 300 days prior to the filing of his [EEOC] charge cannot form an independent basis of liability" and that no alleged discriminatory acts occurred after September 27, 2006.  *See* Def.'s Ex. 6.

In addition, Kline contends that he was constructively discharged due to the fact that Home Depot reduced his hours in the autumn of 2006.  However, Kline conceded that many Home Depot employees, including other part-time employees, were having their hours cut. (Kline Dep. 33-34.)  He elected to resign, not as a result of his diabetic condition, but because he was frustrated with his shortened hours and because he desired to "do something else."  (*Id.* at 34.)  Kline stated that he had resigned with the understanding that he "could come back when business picked back up in the Spring."  (Pl.'s Ex. A at ¶ 8.)  The fact that Kline resigned with an intention to return to work directly undermines his claim that he was constructively discharged as a result of intolerable employment conditions.

Moreover, there is no evidence in the record demonstrating that Home Depot deliberately intended to force Kline from his position.  At most, Kline only reveals that he was dissatisfied with Home Depot's inability to provide him with sufficient hours—a shortcoming that equally affected his co-workers.  However, such dissatisfaction does not evidence any deliberate intent on behalf of Home Depot.  *See, e.g.*, *Johnson v. Shalala*, 991 F.2d 126, 132 (4th Cir. 1993) ("evidence put forth . . . may well demonstrate a lack of flexibility or magnanimity on the part of her supervisors, but what it does not demonstrate is a deliberate intent to force Johnson from her job."); *Rankin v. Greater Media, Inc.*, 28 F. Supp. 2d 331, 340 (D. Md. 1997) ("a plaintiff must show more than difficult or unpleasant working conditions coupled with a resignation in order to recover").

### C.  Failure to Rehire

Finally, Kline attempts to propel his cause of action under the ADA upon his claim that Home Depot refused to rehire him because of his diabetic condition.

Failure-to-hire claims asserted under the ADA are evaluated under a modified version of the framework promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Malone v. Greenville County*, No. 06-2631, 2008 U.S. Dist. LEXIS 86520, at *26-27 (D. S.C. Aug. 11, 2008) (citing *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 258 (4th Cir. 2006)). Under the *McDonnell Douglas* schema, a plaintiff must first make a *prima facie* showing of discrimination. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). If a *prima facie* case is made, the burden then shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. *Hoffman v. Baltimore Police Dep't*, No. 04-3072, 2009 U.S. Dist. LEXIS 6626, *41 (D. Md. Jan. 21, 2009). If the employer fulfills this corresponding duty, the burden reverts back to the plaintiff to establish that the defendant's proffered reason is pretextual. *Id.*

To establish a *prima facie* case in an ADA failure-to-hire or rehire case, plaintiff must show that he (1) had a disability; (2) was qualified for the job in question; and (3) his disability played a motivating role in defendant's refusal to rehire.[3] *See Martell v. Sparrows Point Scrap Processing, LLC*, 214 F. Supp. 2d 527, 528 (D. Md. 2002) (citing *Baird v. Rose*, 192 F.3d 462, 466, 470 (4th Cir. 1999)).

    i.)    <u>Whether Kline's Diabetes Qualifies as an Actionable Disability</u>

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of [his] major life activities." 42 U.S.C. § 12102(2)(A). The United States

---

[3] The Fourth Circuit has not specifically outlined the requirements for making a *prima facie* case in an ADA failure-to-hire case. In addition to the three-pronged framework stated above, other district courts from within the Fourth Circuit have proposed a four-pronged framework inspired by the Fourth Circuit's failure-to-promote jurisprudence. Under this schema, a plaintiff must prove by a preponderance of the evidence that: "(1) he is within the ADA's protected class; (2) he applied for the position in question; (3) he was qualified for that position; and (4) the defendant rejected his application under circumstances that give rise to an inference of discrimination." *Malone v. Greenville County*, No. 06-2631, 2008 U.S. Dist. LEXIS 86520, at *26-27 (D.S.C. Aug. 11, 2008). This Court finds that whatever differences may exist between these two frameworks, they do not have any significant bearing upon the present case. Because the parties have fashioned their arguments around the three-pronged test, this Court utilizes it as the applicable standard in this case.

Supreme Court has established a rigorous test for determining disability, noting that "[t]he terms 'substantially' and 'major,' as used in the ADA provision defining 'disability,' . . . need to be interpreted strictly to create a demanding standard for qualifying as disabled . . . ." *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 197 (2002).[4]  "The determination of whether a person is disabled is an individualized inquiry, particular to the facts of each case." *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352 (2th Cir. 2001) (citations omitted).

The parties vigorously debate the issue of whether or not Kline's diabetic condition constitutes an actionable disability under the ADA.  Kline contends that due to his diabetes, his major life activities of working and eating are substantially limited.[5]  Home Depot argues that while diabetes may meet the definition of "impairment," evidence in the record shows that Kline's ability to work and eat were not "substantially limited."

Courts have generally found that diabetes is not automatically considered to be a disability under the ADA.  *See, e.g.*, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999) (remarking that a "diabetic whose illness does not impair his or her daily activities" should not be deemed disabled "simply because of her illness"); *Johnson v. Becton Dickinson Labware, Inc.*, No. 99-567, 2001 U.S. Dist. LEXIS 24978, at *6 (M.D.N.C. Sept. 20, 2001) ("[t]he mere fact that Plaintiff is a diabetic does not establish that she is disabled").  Instead, to arrive at the disability determination, courts engage in a highly fact-dependent and case-specific analysis of a

---

[4]  Congress recently abrogated *Toyota* with the ADA Amendments Act of 2008.  However, the ADA Amendments do not apply retroactively, meaning that *Toyota* still controls in the instant case.  *See, e.g., Bateman v. American-Airlines, Inc.*, 614 F. Supp. 2d 660, 670 n.1 (E.D. Va. 2009).

[5]  In his Complaint, Kline claimed that his ability to engage in the major life activities of working, eating, and driving were substantially limited.  (Compl. ¶¶ 12, 17.)  However, in his Response to Defendant's Motion for Summary Judgment, Kline only addressed the activities of working and eating.  This is understandable, as courts have determined that driving cannot be classified as a major life activity.  *See, e.g., Wyland v. Boddie-Noell Enterprises Inc.*, No. 98-1163, 1998 U.S. App. LEXIS 29355, at *6 (4th Cir. Nov. 17, 1998); *Kellogg v. Energy Safety Services, Inc.*, 544 F.3d 1121, 1126 (10th Cir. 2008); *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329-30 (11th Cir. 2001).

diabetic's condition after mitigating measures, such as insulin, are taken into account.  *See Sutton*, 527 U.S. at 482.

The facts in the record and the arguments set forth by counsel make it a close question as to whether a genuine issue of material fact exists over whether Kline is substantially limited in the major life activities of working and eating.  However, this issue need not be resolved, as this Court has determined that Kline cannot satisfy the third requirement of a *prima facie* case. Specifically, even if Kline's diabetic condition was recognized as an actionable disability under the ADA, his discrimination claim founders because he cannot show that his disability played a motivating role in Defendant's decision not to rehire.[6]

    ii.)    <u>Whether Kline's Disability Played a Motivating Role in Defendant's Decision Not to Re-Hire</u>

It is well-established that "the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 153 (2000).  Therefore, in analyzing whether the decision not to re-hire Kline evidenced disability-related discrimination, this Court must determine if there is any genuine issue of material fact as to whether the relevant decisionmaker at Home Depot was motivated by a disability-based animus.  *See id.*, at 141 (noting that the protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome") (internal quotations and alterations omitted).

Evidence in the record indicates that Afable alone made the decision not to re-hire Kline in early 2007.  As Human Resources Manager, Afable was primarily responsible for hiring, training and retention.  (Afable Dep. 7.)  Afable stated that he decided not to re-hire Kline

---

[6] Because Kline's failure to rehire claim does not satisfy the third prerequisite of a *prima facie* case, this Court need not examine the second prong of the analysis—whether Kline was qualified for the job in question.

because his limited availability did not satisfy the company's anticipated need for full-time workers during the busy spring season.  (*Id.* at 43-44; Def.'s Ex. 2.)  Tony Mazzola, Home Depot's Store Manager, testified that he only interviewed job applicants after Afable had already found them to be qualified.  (Mazzola Dep. 35-36.)  Because Afable had denied Kline the position, Mazzola never reviewed Kline's application.  (*Id.*)

Moreover, there is no evidence in the record that Afable was aware of Kline's diabetes at any relevant point in time.  Afable stated that he did not find out about Kline's condition until he received notice of the underlying discrimination charges, and that he never had a discussion about diabetes with Kline or with anybody else at Home Depot.  (Afable Dep. 25-26.)  Kline admitted that he never informed Afable about his diabetes and that he was not aware if anyone else at the company had informed Afable.  (Kline Dep. 92-93.)  Finally, Kline acknowledged that while Home Depot had implemented a procedure to receive employee complaints, Kline had never issued any complaint that cited his medical condition.  (*Id.* at 123.)

In support of his claim that a disability-based animus motivated the decision to deny his rehiring, Kline notes that he informed Mazzola that he had diabetes early on in his employment and that "everybody" in management and human resources at the company knew that he was diabetic.  (Kline Aff. ¶ 3.)  In 2005 Kline submitted to Home Depot a letter from his doctor explaining his diabetic condition and urging the company to allow him to work a consistent schedule.  (Pl.'s Ex. C; Krantz Aff. ¶ 4.)  Because Afable was the Human Resources Manager from June 2006 until April 2008, he had access to Kline's file containing his doctor's letter. Therefore, Kline maintains, a reasonable jury could find that Afable had knowledge of his disability.

In essence, Kline argues that because a letter in his employment file mentioned his diabetes, and because some people at Home Depot knew about his diabetes, Afable probably knew, or should have known, about his diabetes.  However, Kline cannot support his claim on the basis of such speculation.  *See Taylor v. Ameristeel Corp.*, 155 Fed. Appx. 85, 90 (4th Cir. 2005) ("a genuine issue of material fact cannot be created through mere speculation or compilation of inferences").  Because Kline cannot point to any evidence showing that Afable— the person principally responsible for the employment decision—was even aware of Kline's diabetes (let alone that he was improperly motivated), he cannot make out a *prima facie* case of disability-based discrimination.

Furthermore, even if Kline were able to state a *prima facie* case, Home Depot has provided a legitimate, nondiscriminatory justification for the decision not to re-hire Kline.  As noted above, Afable had determined that Kline was not suitable for employment because his limited availability did not meet the business needs of Home Depot going into the busy spring season.  Kline, on the other hand, has not produced evidence that this justification is pretexual.  Kline stated that he told Mazzola that he was available to work full-time (Kline Dep. 138.), but he cannot present any evidence that Mazzola ever informed Afable about this conversation.  Kline admitted that he did not update his application to reflect his willingness to work full-time. (*Id.* at 135.)  On the other hand, Mazzola and Afable stated that they would never seek any more information concerning the availability of a prospective employee, when that prospective's available days and hours were already indicated in an application form.  (Afable Dep. 51-52; Mazzola Dep. 35-36.)

**II.    State Law Claims**

In addition to his claim under the ADA, Kline asserts two state law causes of action.  In Count II he alleges that Home Depot "falsely represented that, if and when Plaintiff resigned and re-applied in January and/or February of 2007, [Home Depot] would re-hire Plaintiff on the same employment terms in existence at the time of his resignation."  (Compl. at ¶ 21.)  Count III sets forth a claim for promissory estoppel on the allegation that Kline reasonably relied upon Home Depot's promise that it would rehire Kline in the event that he re-applied.  (*Id.* at ¶¶ 26-30.)

## A.  Fraudulent Misrepresentation

To establish a cause of action for fraud under Maryland law, a plaintiff must show:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 665 A.2d 1038, 1047-48 (Md. 1995).

Kline has failed to provide sufficient evidence in support of his claim that a supervisor at Home Depot made a false representation to him concerning his resignation and prospects for re-hire.  During his deposition, Kline stated that he requested to take a month off from work in late 2006.  (Kline Dep. 140-42.)  Kline met with Afable, who explained that he could only take a leave of absence for a medical purpose.  (*Id.* at 142-44.)  Afable then advised Kline to resign instead of quitting so that he could re-apply for the position in early 2007.  (*Id.* at 144-45.)  Afable said that "[Home Depot] can hire you back after the first of the year when it got busier."  (Kline Dep. 145.)  In his deposition, Kline repeatedly confirmed that during this conversation Afable used the words "can" and "could."  In addition, he acknowledged that Afable had not used the word "will" in discussing the opportunity for re-employment.  (*Id.*)  He noted that the

two of them did not discuss anything relating to salary, his schedule, or his date of return.  (Kline Dep. 147.)

In addition, Kline must present evidence showing that Afable intended to defraud Kline. *See Hale Trucks of Maryland, LLC v. Volvo Trucks North America, Inc.*, 224 F. Supp. 2d 1010, 1032 (D. Md. 2002) (noting that "intent is an element of fraud").  Kline testified that he had no reason to believe that Afable had lied to him during the conversation:

> Q.  And so do you have any reason to believe that when he said we can hire he knew that wasn't true?
> A.  I don't have any reason to believe that he was lying to me; no, ma'am

(Kline Dep. 145:11-14.)  Kline's deposition testimony therefore directly undermines his allegations that there was a false representation and an intent to deceive.

At the very end of his deposition Kline stated: "I was told that I would be hired back after the first of the year when they got busier, so I was going by that statement."  (Kline Dep. 191-92.)  Also, in his response to an interrogatory, Kline stated that Mazzola and Afable informed him that "he would be hired back."  (Def.'s Ex. 7.)  However, these representations stand in stark contrast to his lengthy and detailed testimony concerning his conversation with Afable prior to his resignation.  The fact that Kline's own testimony and evidence are internally inconsistent does not create an issue of material fact on this matter.  *See DeGirolamo v. Sanus Corp. Health Systems*, No. 90-2146, 1991 U.S. App. LEXIS 12281, at *12 (4th Cir. Jun. 17, 1991) ("[e]ven at the summary judgment stage fraud must be proved by clear and convincing evidence") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-55 (1986)).

**B.  Promissory Estoppel**

A cause of action for promissory estoppel is established under Maryland law once a claimant has shown: "1) a clear and definite promise; 2) where the promisor has a reasonable

expectation that the offer will induce action or forbearance on the part of the promisee; 3) which does induce actual and reasonable action or forbearance by the promisee; and 4) causes a detriment which can only be avoided by the enforcement of the promise." *Estrin v. Natural Answers, Inc.*, 103 Fed. Appx. 702, 705 (4th Cir. 2004) (quoting *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 674 A.2d 521, 532 (Md. 1996)). A "clear and definite promise" is described as "one that reasonably defines the contours of the action or forbearance." *McKenzie v. Comcast Cable Commc'ns., Inc.*, 393 F. Supp. 2d 362, 372-73 (D. Md. 2005).

Kline's claim of promissory estoppel fails for the same reason that undermines his claim of fraudulent misrepresentation—the record reflects that Afable had merely represented to Kline that he "could" be re-hired at a future date. As mentioned above, at several points during his deposition, Kline conceded that he was told that he "could" be reemployed, and at one point he specifically denied having been told that he "will" be reemployed. (Kline Dep. 145.) This evidence does not reveal the occurrence of a "clear and definite" promise that is prerequisite to a *prima facie* showing of promissory estoppel.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Paper No. 16) is GRANTED. A separate Order follows.

Date : July 27, 2009                                 /s/_____
                                                     Richard D. Bennett
                                                     United States District Judge